Good morning. I'm Jonathan Grossman for the appellant Christopher Hubbard. And I would like to touch a bit on the mootness issue, but we do have other issues to talk about. First of all, one supplemental briefing or paper that we submitted cited the case of Tyers v. Finner or Finner v. Tyers, which was a situation where a patient was committed in California for being retarded. And it was a one-year commitment, and the commitment had been extended, I think, twice. And he had actually been released in an outpatient supervised program. The Ninth Circuit held that the appeal in the Ninth Circuit from the habeas petition was not moot. And the reason why it was not moot was because this was a case that was being repetitious not in a general scheme of things, but for him individually. He was continually subject to the same recommitment or commitment extension procedure, and the same issues that he was raising in his petition was arising in his cases. So in his case, the controversy lived on because his commitment lived on. The commitment proceeding is called a commitment extension. It doesn't die and then become reborn. It becomes extended. It's as if you were sentenced to five years in prison, and then they extend it to be seven years in prison, and then they extend it to be nine years in prison. It's an extension of the same commitment. It's not a brand-new commitment. The case that the Attorney General has cited talks about the fact that it's really you have a commitment that starts, it continues, and then eventually it dies. But it doesn't stop and then start and stop and start and stop. And I think a good test of mootness is if the Attorney General came here and conceded that we were right on all the points we raised, what do they have to lose? And if they have something to lose, we have a controversy. And in this case, if they conceded that if Mr. Hubbard were committed illegally from the start, because he was not in lawful custody to start with, therefore, his subsequent SDP commitment was unlawful. And his extensions are unlawful. But we've got a California appellate court decision that says it doesn't matter whether he was originally committed unlawfully and aren't we bound? I mean, we can't reconsider California's interpretation of its own statutory law, can we? Well, we could talk about the due process argument, but as for the mootness argument, if AG prevails, then AG prevails. It doesn't address whether or not it's moot. If we prevail, then he needs to be released. Therefore, it's not moot. But what I'm suggesting to you is the ground that you're arguing, I don't think we can grant relief on. We can't second-guess the California appellate court ruling that that did not constitute a ground under the State statute to challenge the lawfulness of his continued detention. We can't because it violates his Federal due process rights, substantively and procedurally. If the argument the Attorney General's Office has is it's okay because he's in custody on an unlawful order to start with, a prorogatification, but it was done in good faith. If you think about that, the converse of that argument is if they unlocked him up in bad faith, that would be a due process violation, not because of State law, but because of Federal constitutional protections. To use an extreme example, if I were to take you and arrest you as an officer of the State and put you in prison and then commit you based on this just because I'm being arbitrary and capricious, I think you have good grounds for arguing that, A, my original arrest of you was a substantive and procedural due process violation, and your subsequent commitment that's based solely on you being in custody perpetuates the same procedural and substantive due process violation. You argue that it's solely because he's in custody, but it's more than that, isn't it? The statute provides a standard by which the jury must find by proof beyond a reasonable doubt that he poses a likelihood of future dangerousness based upon his past behavior. And that doesn't have anything to do with the fact that he was initially in custody. But for him being in custody, he cannot be committed under the SBP Act. That's what it has to do with it. Well, I understand that that's the predicate, but that's not the issue that the jury decides on which he is ultimately held for the two-year period. That's true. That's why. That initiates the proceeding. But you have no proceeding to initiate. You have nothing to go before the jury.  Well, then under that argument, if we did simply lock you up arbitrarily, totally illegally, and then use that as a ground for continuing to keep you in custody, then that would      But that's where I lose you. That's the grounds on which you're kept in custody. No, the grounds on which you're kept in custody are the jury finding by proof beyond a reasonable doubt that you meet the standard of dangerousness under the statute. That's the authority to keep you in custody. But you have no proceeding unless he's in custody. To give you another example. Well, counsel, it's sort of a circular argument. I understand your point. If you want to move on to another one, I don't know that you and I are going to be able to resolve this. Well, I was going to give a different analogy. In Pay v. Robinson, the question for the jury was whether or not the person was guilty of a crime. The problem was the guy was incompetent. And although the jury verdicts on the facts before it may have been perfectly valid, the man did not have a fair trial. And his incarceration was a violation of due process because he was unable to participate meaningfully in the trial. The whole trial in itself was a sham. It should never have happened when he was incompetent, let alone the fact that the jury was not able to make a decision on the limited facts that were before it. This is the same situation. This proceeding should never have happened. The fact that once you give him due process rights for something that should never have happened doesn't erase the fact that this wasn't supposed to occur in the first place. So it really is a taint argument that follows him all the way through no matter how many of these commitments he had. Correct. Because he was never supposed to be in there in the first place. I understand your argument. Okay. It's also an equal protection violation in the sense that if he is just like everybody else who was out on parole and obeyed the law, obeyed the conditions of parole, he, like everybody else in that situation, should not be committed. And the justification that the State gives is, well, he's in custody. But that doesn't explain that. That in itself is circular. And if he were going to be committed merely because he was black, that's clearly a racial discrimination. We don't have too much trouble seeing that. It doesn't help to say when he's dissimilar situated because he's black. He's similarly situated if he has the same credentials as anyone else. For example, for employment discrimination, if he has the same background, the same ability to do the work, he's equally situated from everybody else who has the same qualifications. Discriminating against him because he's black is the dissimilar treatment. It doesn't make the ‑‑ it's not the dissimilar situation. In this situation with the SVP statute, he is just as qualified to be committed, if you will, as everyone else with the same kind of criminal records or who might qualify under the SVP statute who are on parole and do nothing that warrants being violated. It is, to me, the mark of arbitrariness to say, well, because the State illegally incarcerated him, that's grounds for treating him differently. So is your argument that the State ‑‑ the only way the State could have initiated proceedings against him would be that he would have to reoffend and then become in custody as a result of another sexual assault while he was out? Well, that's what I gave the State. If he's on parole, he would have to either violate the law or condition of parole. That does not necessarily mean he has to commit a sexual offense. I mean, he could just not report to his parole agent. But if he's being compliant, everybody else on parole is not supposed to have the parole revoked for complying with the laws and the conditions. And it's arbitrary to pick him out because the State incarcerated him illegally to start with. Well, isn't ‑‑ in this case, though, isn't he now under a revocation of a parole? Isn't that his ‑‑ the technical reason for holding him? Right. His parole was revoked originally in 1993 because it was determined he needed psychiatric treatment. He had a 20‑year sentence or something, or 16 or whatever.  And then he got out again on parole, and it was revoked again. And he's now under another revocation, isn't he? Well, right now his parole is actually over. He's in custody because of the SBP statute. But I think I understand what you're saying. In 1990, he was actually released at some point. He violated parole. He actually committed an assault. Yeah. His parole was revoked. When this case started, he was serving a parole revocation. Right. It was a parole revocation based on a rule that the prison officials created on their own that was facially invalid. They didn't have the authority to just put people in custody because they decided they needed psychiatric treatment. Well, has any court held that that's unconstitutional? It was basically held to be ‑‑ the whole thing, to be quite honest, is that it was beyond the statutory authority of the prison board to do this. There was a comment in the case that says it's also a due process violation because you don't have the kind of protection that you would have to give people psychiatric treatment. That was the Tarun ‑‑ People v. Wheatley Tarun case. The whole thing is a little bit more narrow than the actual language of the court, which was that it's simply beyond the statutory authority. They never had the authority to make their own rule that says, well, because we think you need psychiatric treatment, we could lock you up for a parole revocation. It had to be a violation of a condition of parole or a violation of the law. Well, in this same Hubbard is the Hubbard in the State Supreme Court case, isn't he? Correct. And in that case, the court held that the SVPA is constitutional. Correct. Now, has that ever been collaterally attacked in a federal court? Yeah. That was some of the grounds of the petition in the habeas corpus. Not all the certificate. The certificate of appealability only was limited to four. Has that California case survived all of the collateral proceedings? Is that still good law? In other words, the California Supreme Court case saying the statute is constitutional is still good law. Correct. The problem here is that the commitment itself is unconstitutional in violation of due process, notwithstanding the fact that the statute itself may be valid, and that to lock him up illegally and therefore illegally commit him does not require a finding that the statute itself is illegal. The process of initiating the proceeding against him to perpetuate the due process violation, in this case, violates his due process rights. One broader attack to the statute that we are making is that the definition of mental illness in the SDP Act violates equal protection, because we have a situation where, under Jackson v. Indiana, a State doesn't have the freedom to start saying that someone's mentally ill in this process more broadly than it defines mental illness in other processes. And the SDP Act has that infirmity. It defines mental illness more broadly than you would find anywhere else in California's statutory commitment schemes. In other words, under any other commitment scheme in California, people who qualified for the SDP Act would not be found mentally ill. They're not mentally ill under any other context except for the SDP Act. Now, there are other ways that the SDP Act violates the SDP Act. And it violates the SDP Act by violating the State's own rules. And Hubbard himself, his diagnosis for the SDP commitment is paraphilia. But one of the ways the State of California tried to keep him in custody in 93-94, besides his violating his parole for its own rule, was they tried to commit him under the Mentally Disordered Offender Act, which is the MDO Act, which is separate from the MDSO Act. Now, the State argues that his, at least for the commitment that he's challenging, he didn't fall within a class that's different. In other words, that he wasn't diagnosed to have the additional element that the SDP Act has. It's almost a standing argument, I guess. But empirically, he does, because they evaluated him from the MDO Act, and he did not qualify. He wasn't considered mentally ill under the MDO Act. If he qualified as a mentally disordered offender in 1994, frankly, he probably would have never had the SDP law. I mean, it was passed with him in mind. Well, is the mental, is the monomania a form of mental illness? Monomania? Well, he just has one obsession. Maybe it's black helicopters or maybe it's little boys or whatever. But that's one obsession. Is it something wrong with that, being called a mental illness or a mental disorder? Under the Due Process Clause, the State has wide authority in deciding what it describes to be mental illness. Under the Equal Protection Clause, it cannot say that because someone's a sex offender, we're going to broaden the definition just for those people what mental illness means. Would it violate due process if the state amended its act so that the subject didn't have to be in custody of any kind? No, I don't think so. In Kansas, they don't have to be in custody. But that's not what we have here. Well, if the state, then why would it violate due process if the state says that it's okay if it's unlawful custody, if they could, without violating due process, say custody isn't required at all? Because when they say it is required, you can't put them there illegally in order to make them qualify. Well, the state, as I understand it, kind of the state court that reviewed that issue, I believe, had sort of said if it's a good faith error or something like that. So if the state simply said, well, we want to put somebody away under this law, therefore, let's just go out and arrest him illegally, and then we'll have custody, and then it will be all right, that might not qualify under the state decision. But I don't see the distinction between arresting someone in bad faith and good faith. If he's not in custody legally, then he should not be in custody. If he should not be in custody... But that's not what the appellate court said. The appellate court said custody is all that counts, right? But they're also saying it has to be in good faith. Now, under a concept of federal due process, I have a right to be free unless I do something wrong or there's some compelling reason to commit me. If you incarcerate me illegally and say, ah, you're in custody, now we can do whatever we want to do with you that the law now provides. We may be able to experiment on you medically, chop off your legs, whatever it is, and assuming that's generally okay, but I wasn't supposed to be there to start with, then you don't have the state doesn't have the right to start doing that to me, especially once the state knows about it. And this isn't a situation where we suddenly discover it after the fact that it was illegal. I mean, he petitioned the court before the SVP and the law went into effect, saying that his incarceration was illegal, and after the Tebrum case came out, although the SVP petition had been filed, but he had to be committed, he petitioned the court again to be released. The court's unnoticed. The state's unnoticed that his commitment is illegal or his incarceration is illegal. The reason why he's in custody at the time, which is before any SVP commitment, they know is illegal, yet they still don't release him, and they continue to hold onto him in order to commit him. If a court had ordered that he be released and they kept him in custody until they filed an SVP petition, would that be okay? And our contention is if one has a Federal due process right to be free, which one has, the State cannot arbitrarily and illegally incarcerate you and then take advantage of its own illegal acts to keep you in custody for 10 more years under whatever schemes it decides to come up with later on. And I'd like to reserve my remaining time for rebuttal. Roberts. Thank you, Mr. Grossman. Ms. Ruffin. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. I would like to touch briefly on the mootness argument because I think there are a few items that are different from this case than the original case. Unlike a criminal conviction, you can't presume collateral consequences from a commitment order under the sexually violent predator law. And the petitioner has suggested one particular collateral consequence to try to show that his case has a live controversy. And that is that he says that if he was illegally in custody originally and the court finds that the first commitment was therefore invalid, then his current second commitment will also be declared invalid because he wasn't in valid custody for the first commitment. So the commitment orders will fall like dominoes. But I think that the state court's opinion totally refutes that argument. The California Court of Appeal in People v. Hubbard held that lawful custody is not required. So even if this court were to find that there was some due process violation in his first commitment order based on his parole revocation, that wouldn't affect his second commitment order because he was clearly in good faith custody for the first commitment order. In other words, the officials who went through the process, had the jury trial, found that he qualified as a sexually violent predator for the first commitment, they were acting in good faith. So that means that there is no effectual relief that the court can grant as to the current 2000 commitment order that's at issue before the court. But that expired two years later, didn't it? That's our point, Your Honor, that that has expired, so the court can't grant any effectual relief even if it agrees with the petitioner's current argument. His 2002 commitment is still valid, and his argument can't have any effect on the current commitment. His 2002 commitment expired a month or so ago, didn't it? No, I believe it's due to expire in August of 2004. August. Yes. I guess I was looking at the earlier one, it was March. A new commitment petition has already been filed because they have to begin those proceedings ahead of time, but he is currently in custody on a valid commitment that doesn't expire until August. I'd also like to touch briefly on the capable of repetition yet evading review exception. And in this case, well, there are two prongs to that. One is that the action must be too short in litigation to be fully litigated. And in Spencer v. Chemna, the Supreme Court said that it always has to be too short. And it's our position that these kinds of cases are not necessarily going to evade review. In Chemna, it was a three-year commitment parole revocation, and the Supreme Court said that was not too short. We cited some cases that say that one year and three months is also not too short. We agree that one year is too short. But one thing that the petitioner in these kinds of cases can do if they're concerned about justiceability is ask for their appeals to be expedited. They can ask for that in the California court of appeal. They can ask for that in the district court. They can ask for that in this court. And that didn't happen in this case, but I think the burden has to be on the petitioner to some extent to make sure that the case is ripe when it's going through the various courts, if that's going to be a concern. There is a provision, is there not, for original habeas jurisdiction at every level of the California court system? There is. So he could, if he wanted to, file an original petition directly with the California Supreme Court. Yes, he could. I think he actually did that at one point. Another point in this particular case, this case has already been reviewed on the merits by four courts. It's been reviewed by the California court of appeal, the California Supreme Court, the U.S. Supreme Court, because he did a petition for certiorari, and then the district court. Well, they denied cert. So, I mean, isn't the rule the fact that they denied cert is just that? They denied cert. Well, he did have an opportunity to present his claim to the Supreme Court, though. So this would be the Fifth Court to review it on the merits if the court were to find that it isn't moot. Review it on the merits. Not to review it on the merits. If the court were to find that it was not moot, it would be the Fifth Court to review it on the merits. The district court already did. I'm not counting the U.S. Supreme Court. True. That was not a merits review, but he's unlikely to have gotten merits review if he has already presented his petition and they didn't feel that it was worthy of certiorari review. I mean, that's the case. But no one denied it. I'm sorry? Because they couldn't get four votes. We don't know. Well, that's true. That's true. The other point as to the capable of repetition yet evading review requirement as to this particular case is the second prong of that is that there must be a reasonable expectation that the same complaining party will be subject to the same action again. And I think the Court has had a lot of discussion about that. But in this case, there is one challenge that is a facial challenge to the statute. But really, the primary arguments deal with his claim that he was in unlawful custody when the first commitment order was commenced. And that is a particular challenge to the circumstances of the first commitment order. So that claim is not going to come up again in subsequent commitment orders that only pertain to the 2000 commitment order. So that's really over and done. So he doesn't meet the second prong either. It may. I mean, he certainly has the theory that his present – I shouldn't say his present – that his commitment was unlawful because he was originally in a different unlawful custody. I mean, in other words, his position is that the custody that is built on an unlawful custody is also unlawful. And I presume he can raise that claim forever. But that was my initial point, why there's no live case or controversy. The California supreme courts have held that as long as you're in good faith custody, that satisfies the custody requirement. So even if this Court found that his first commitment order was invalid for some reason, the State courts had a good faith attempt to put him in custody that first time. So under State law, even if the Court found that the 2000 commitment order was invalid, that wouldn't matter because they proceeded under that commitment order in good faith. So the second commitment order, the 2002 commitment order, would still be lawful. That wouldn't be a reason to invalidate it. I guess as it often does, it kind of – it's a mootness argument that requires an assessment of the merits. It doesn't happen. They certainly tie in. My only other comment on the mootness argument is the Tyers v. Finner case. That was a one-year commitment. And, again, as we've conceded, a one-year commitment is probably too short to fully litigate it. Now I'd like to talk about the due process violation. And first I'd like to focus on exactly what it was that happened here. In 1993, his parole was revoked. Now, at that point, he had been out of custody for about a month and a half. And the board – or the parole board found that he qualified under a regulation that said that a person who is dangerous and isn't going to receive sufficient psychiatric care in the community can have their parole revoked. At that time, the regulation was completely valid. It wasn't until five years later that a California court of appeal found that it was not valid. So the board was completely proceeding in good faith. And, as a matter of fact, the California court of appeal made a factual finding that there was good faith. And that factual finding is binding on this Court. It hasn't been rebutted. So that's really over and done with. But even if there were some question about it, in this case the defendant raped a criminal conviction. When he was released on parole, he re-offended after just three months. And then he was sent back to prison again. After his second release on parole, he re-offended after two months. So, in this case, after his third release, the board decided to use this regulation to revoke his parole after just a month and a half. That was clearly in good faith.  to grant him that last parole. I'm not sure how that worked. It was a 16-year term. I'm not either. It's not in the records. All right. Correct. He didn't serve the entire term. But what that ties into is the state court has interpreted the statute to mean that custody requires either lawful custody or unlawful custody in good faith. Now, that is simply a statutory interpretation. That's what Welfare and Institution Code Section 6601 means. And the state court has decided that this court can't revisit it, and every other state court to look at the same issue has reached the same conclusion. So everyone who is in the same position as Mr. Hubbard has had the exact same result. In other words, there are, I think, five or six people whose parole was revoked under this same regulation and who then had sexually violent predator proceedings commenced against them. And the courts have uniformly found that under those circumstances that met the statutory requirement of custody so that the SVP proceedings could go forward. I mean, as he made clear, he has to make a due process argument. Correct. And I think that that question is a separate question of whether the action is narrowly tailored to serve a compelling governmental interest. And the governmental interest in this case could hardly be more compelling. It's to protect the public from a person who has demonstrated that he will reoffend as soon as he's out of custody. And, again, he has raped 40 women. So it's really not hyperbole to say that this is about the most compelling state interest that you can come up with to protect the public from this extremely dangerous person. I suppose, though, in determining whether the situation is a violation of due process, we probably have to be more categorical in that. It isn't whether this particular offender is. If it violates due process to, you know, have unlawful custody, then it violates due process for everybody. True. But the governmental interest is the same, which is to protect the public from people who qualify. Generically from people who. Right. And by definition, people who qualify under the SVPA are dangerous people. Mr. Hubbard is one of the most dangerous. But then the next question is whether it's narrowly tailored. And what the State statutory interpretation says is that custody only means people who are either in lawful custody or unlawful custody but good faith. And the State court found that was narrowly tailored. The district court found that was narrowly tailored. It limits it to a very narrow subclass of people. And the question here is whether the State court's determination on that point was reasonable, was objectively reasonable. And the way the State court interpreted Supreme Court law of due process clearly was not objectively unreasonable under the highly deferential standard that this court is required to employ under the ADPA. No court has raised the question whether these restrictions of ADPA on habeas review apply just as well to a civil commitment as to a criminal. Or have they? Not that I know of. However, this petition was filed under 2254. So the proceeding. Well, that statute, of course, just talks about someone in custody pursuant to the That's right. It's an interesting question that I don't think has really. I suppose he's in custody, whether it's criminal or civil. He is in custody, just not pursuant to a criminal conviction. He is pursuant to a judgment of a State court, presumably. Yes. Yes. We didn't brief that issue, but if it, you know, if the Court would like any additional briefing, we'd be happy to do that. But, again, as I say, it was under 2254, so I think that means that the provisions of the ADPA apply here. I'll briefly address the final constitutional questions. The State court found that there was no equal protection violation based on the fact that they proceeded on a person that was later found to be in unlawful custody, because he was not similarly situated to people who are not in custody at all. And that would include people who might potentially qualify under the Sexually Unlawful Custody Procedure. And that would include people who had been released pursuant to the 1998 State case invalidating the statute. Now, I will note that it's unclear whether there are any people that fall into either one of those categories. I'm not aware of any cases where a person was simply released under that statute who didn't otherwise qualify for the SVPA. There, as I mentioned, there are a number of cases of people who were in the same boat as Mr. Hubbard and SVPA proceedings commenced. But even assuming that there might possibly be some people in those hypothetical situations, as I said, the district court found that those, that they're not similarly situated because one person's in custody and one person is not in custody. And if they're not similarly situated, there's no equal protection violation. Even if you could find that they were similarly situated, the state court found that the statute is designed to apply to people who can be identified while they are incarcerated. And it applied a strict scrutiny standard. It held that this does meet the classification. It's narrowly tailored to further a governmental interest. And the idea that the state wants to have people already in custody so that they can identify, confine, and treat them under the SVPA doesn't violate equal protection. That state court decision is not an unreasonable application of the law of equal protection. And finally, on the equal protection violation, based on the definition of a mental disorder, it's true that the SVPA has a slightly different definition. It includes personality disorders as well as mental disorders. But in Kansas v. Hendricks, the Supreme Court made it very clear that you can define that mental disorder in many different ways. Medical terms are necessarily abstract. The Supreme Court itself used a variety of different terms to describe the kind of mental disorder that will qualify for a civil commitment. And given that extremely broad discretion that state legislatures have in fashioning statutes, the state court found that any slight difference didn't violate equal protection. And, again, that's not an unreasonable application of those laws. Unless there's further questions? Thank you. Thank you. Counsel? Thank you. First of all, in the mootness issue, the idea of being able to file a habeas petition directly to the Supreme Court is a red herring, because the doctrine is if there's an appeal that you could file, that's the remedy you must pursue. You can't do an end run on an appeal by filing a habeas petition. So as a practical matter, the case has to proceed up to court in an orderly fashion. But you're saying that even in the exercise of its discretion, the California Supreme Court would never accept a habeas petition where the time was of the essence? It has the discretion. The doctrine is, under, I think it's Wardius or Dixon, if an appeal lies, that's what they need to do. When Mr. Hubbard filed a direct habeas petition to the Supreme Court, it was while he was in custody with the SPP petition pending, there was no judgment yet, when he was saying, okay, you've now said that this regulation is illegal, let me out. And at that point, they still didn't let him out. But that's separate from trying to go back to judgment. They didn't let him out or simply dismissed his petition in the exercise of discretion. Well, really, the latter. I'm hearing it legally, so therefore, the SPP petition needs to be set aside. But there was no judgment at that point to attack. And finally, as to, let's see, I've got 45 seconds. The justification that the State gives for most anything is this person has raped 40 women, he's a dangerous person, we need to lock him up. Under that rationale, they could chop off his legs, they could make him immobile. Counsel, we can't blind ourselves to your client's lengthy history. No, I'm not asking you to. I mean, the State surely has made out a compelling case with regard to the fact that he, by his conduct, he poses a danger to the community. The question is whether or not he still poses a danger. I understand that. I don't dispute that. What I dispute is that that justifies anything that it does. And the point that I'm trying to make in these cases is that rationalization does not justify how they're treating him differently from other SPP candidates who could be just as dangerous. Okay. Thank you for your argument. Case just argued is submitted. And we'll hear argument in Jones v. Devaney. Thank you. I think it's going to be a lot of work. Yeah. Yeah. But we'll do that.
judges: Goodwin, Canby, Tallman